Jacob L. Houmand, Esq. (NV Bar No. 12781)
Email: jhoumand@nelsonhoumand.com
NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U
Las Vegas, Nevada 89169-0903
Telephone:    702/720-3370
Facsimile:    702/720-3371

*Electronically Filed On: August 16, 2016*

[Proposed] Counsel for Victoria L. Nelson, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re: | Case No. BK-S-16-10769-BTB |
| --- | --- |
| LEONARD A. MANCUSO, II, | Chapter 7 |
| Debtor. | **OPPOSITION TO MOTION TO RECONVERT CHAPTER 7 PROCEEDING TO CHAPTER 13 PROCEEDING** |
| | Date of Hearing: August 30, 2016 |
| | Time of Hearing: 1:30 p.m. |
| | Place: Courtroom No. 4, Second Floor |
| | Foley Federal Building |
| | 300 Las Vegas Blvd., S. |
| | Las Vegas, NV 89101 |
| | Judge: Honorable Bruce T. Beesley[1] |

VICTORIA L. NELSON, the duly appointed Chapter 7 Trustee in the above-captioned bankruptcy case (the "Trustee"), by and through her proposed counsel Jacob L. Houmand, Esq. of the law firm of Nelson & Houmand, P.C., hereby submits this *Opposition to Motion to Reconvert Chapter 7 Proceeding to Chapter 13 Proceeding* (the "Opposition").

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure will be referred to as "FRCP" and the Federal Rules of Bankruptcy Procedure will be referred to as "FRBP." The Local Rules of Practice for the United States Bankruptcy Court for the District of Nevada shall be referred to as the "Local Rules".

-1-

The Opposition is based on the following Memorandum of Points and Authorities, the pleadings and papers on file herein, and any argument that may be entertained at the hearing on the *Motion to Reconvert Chapter 7 Proceeding to Chapter 13 Proceeding* [ECF No. 88][2] (the "Motion to Reconvert").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The overriding theme of the bankruptcy case filed by Leonard A. Mancuso, II (the "Debtor") has been to seek conversion of his case to another chapter whenever he is faced with a negative outcome. This is most evident by the fact that over the span of sixty days the Debtor has sought to convert his case from Chapter 13 to Chapter 7 and then from Chapter 7 back to Chapter 13.

On February 22, 2016, the Debtor filed a voluntary petition under Chapter 13. While his case was pending in Chapter 13, he was forced to amend his Chapter 13 Plan several times after creditors and the Chapter 13 Trustee opposed confirmation of the Chapter 13 Plan. Specifically, the Chapter 13 Trustee opposed the Debtor's Chapter 13 Plan by arguing, among other things, that the Debtor had not provided the Chapter 13 Trustee with documentation necessary for him to complete his investigation of the Debtor's financial affairs. The Debtor then filed his *Application to Convert Chapter 13 Proceeding to Chapter 7 Proceeding* [ECF No. 51] (the "Motion to Convert"), which simply stated that conversion would be in the best interests of the Debtor after a review of his "schedules, statements and plan". *See* Motion to Convert [ECF No. 51], p. 1.

Following the Debtor's conversion of his case from Chapter 13 to Chapter 7, the Trustee uncovered that the Debtor had not resided in Nevada for the 730-day period preceding his bankruptcy filing, thereby requiring him to claim the exemptions available under Florida law. Since Florida law limits its exemptions to current residents and homesteads located in Florida, the Trustee filed her Objection to Exemption (defined below) that sought an order requiring the Debtor to claim the exemptions available under Section 522(d). If successful, the Objection to

---

[2] All references to "ECF No." are to the numbers assigned to the documents filed in the case as they appear on the docket maintained by the clerk of the court.

-2-

Exemption would have had a significant impact on the administration of the equity in the primary asset in the Debtor's bankruptcy case: the real property located at 7850 Summer Solstice Street, Las Vegas, Nevada 89131-4709 [APN 125-15-112-001] (the "Property"). Nineteen (19) days after the filing of the Objection to Exemption, the Debtor filed the Motion to Reconvert seeking conversion of his bankruptcy case back to Chapter 13 based upon the fact that he does not satisfy the income requirements under Section 707(b)(2). The Debtor makes this assertion notwithstanding the fact that on June 30, 2016, he filed a *Statement of Exemption from Presumption of Abuse Under Section 707(b)(2)* [ECF No. 69] asserting that his debts were not primarily consumer in nature.

Such actions are contrary to the intent behind the bankruptcy case and the Debtor should not be permitted to convert to a different bankruptcy chapter whenever he faces an adverse ruling. The Motion to Reconvert fails to include any facts justifying a reconversion of the Debtor's case to Chapter 13, other than the conclusory statement that debt which the Debtor previously identified as "business" debt has now somehow been converted to consumer debt. *See* Motion to Reconvert, p. 2.

Most importantly, an analysis of the Debtor's bankruptcy schedules and a proof of claim filed by the Internal Revenue Service ("I.R.S") in the amount of $75,209.01 indicate that the Debtor's unsecured creditor body totals $420,982.21, well in excess of the statutory limitations for a Chapter 13 debtor pursuant to Section 109(e). As a result, the Motion to Reconvert must be denied because the Debtor is ineligible to file a Chapter 13 based upon his bankruptcy schedules and the proof of claim filed by the I.R.S.

For these reasons, the Motion to Reconvert should be denied and the Trustee should be permitted to continue administering the Debtor's bankruptcy case for the benefit of his creditors.

## II.    STATEMENT OF FACTS

**GENERAL BACKGROUND AND THE DEBTOR'S CHAPTER 13 BANKRUPTCY FILING**

1. On or about May 7, 2015, the Debtor acquired his interest in the Property, which is titled in the name of "Leonard A. Mancuso, II Hayley Mancuso, husband and wife, as joint tenants".

-3-

2. On February 22, 2016, approximately 601 days after relocating to Nevada and 291 days after purchasing the Property, the Debtor filed a voluntary bankruptcy pursuant to Chapter 13 of Title 11 of the United States Code [ECF No. 1].

3. The Debtor's Bankruptcy Petition provided that the primary nature of the Debtor's debts were consumer. *See* Bankruptcy Petition [ECF No. 1], p. 6.

4. Schedule A of the Debtor's bankruptcy petition (the "Bankruptcy Petition") identifies a one hundred percent (100%) ownership interest in the Property. The Debtor scheduled the fair market value of the Property as $498,000. *See* Bankruptcy Petition [ECF No. 1], p. 14.

5. Schedule C of the Bankruptcy Petition provides that the Debtor is also claiming a homestead exemption in the Property in the amount of $93,000 pursuant to Nevada Revised Statute ("N.R.S.") § 21.090(1)(m). *See* Bankruptcy Petition [ECF No. 1], p. 20.

6. Schedule D of the Bankruptcy Petition provides that the Property is secured by a deed of trust in favor of CENLAR in the amount of $405,000. Schedule D of the Bankruptcy Petition also states that the Debtor's creditors holding claims against certain vehicles hold unsecured claims totaling $127,878.62. *See* Bankruptcy Petition [ECF No. 1], pp. 22-24.

7. Paragraph 1 of the Debtor's Statement of Financial Affairs states that the Debtor resided in Florida from January 2013 to July 2014 before relocating to Nevada. *See* Bankruptcy Petition [ECF No. 1], p. 40.

8. Paragraph 11 of the Debtor's Statement of Financial Affairs further states that the Debtor held ownership interests in the following limited liability companies in the four year period preceding his bankruptcy filing: (a) Party Up, LLC and (b) Production X, LLC (collectively, the "Limited Liability Companies"). *See* Bankruptcy Petition [ECF No. 1], p. 45.

**THE CONVERSION OF THE DEBTOR'S BANKRUPTCY CASE FROM CHAPTER 13 TO CHAPTER 7**

9. On February 22, 2016, Rick A. Yarnall (the "Chapter 13 Trustee") was appointed as the Chapter 13 Trustee in the Debtor's bankruptcy case [ECF No. 5].

10. On March 1, 2016, the Debtor filed a *Chapter 13 Plan With Determination of Interest Rates* [ECF No. 12] (the "Chapter 13 Plan").

11.     On April 11, 2016, American Express Bank, FSB and American Express Centurion Bank (collectively, "AMEX") filed an *Objection to Confirmation of Chapter 13 Plan* [ECF No. 17] (the "AMEX Objection").  The AMEX Objection opposed the Chapter 13 Plan on the grounds that it was not filed in good faith pursuant to Section 1325(a)(3) because the Debtor was proposing to retain luxury vehicles while making an insufficient distribution to his general unsecured creditors.

12.     On April 20, 2016, Space Coast Credit Union ("Space Coast") filed an *Objection to Debtor's Plan of Reorganization* [ECF No. 20] (the "Space Coast Objection").  The Space Coast Objection opposed the Chapter 13 Plan on the grounds that it did not pay Space Coast the allowed amount of its secured claim pursuant to Section 1325(a)(5)(B)(ii).

13.     On April 21, 2016, the Chapter 13 Trustee filed *Trustee's Objection to Confirmation of Plan Combined With Trustee's Recommendation for Dismissal* [ECF No. 22] (the "Trustee Objection").  The Trustee Objection opposed confirmation of the Chapter 13 Plan on the grounds that the Debtor had not provided the Chapter 13 Trustee with documentation that was necessary for him to complete his investigation of the Debtor's financial affairs.  The Trustee Objection also requested that the Debtor's Bankruptcy Schedules and Statement of Financial Affairs be amended to include any income generated from the Limited Liability Companies.

14.     On May 10, 2016, the Chapter 13 Trustee filed a *Supplemental Trustee's Objection to Confirmation of Plan Combined With Trustee's Recommendation for Dismissal* [ECF No. 34] (the "Supplemental Trustee Objection").  The Supplemental Trustee Objection again stated that Debtor had not provided the Chapter 13 Trustee with documentation necessary for the Chapter 13 Trustee to complete his investigation of the Debtor's financial affairs.  The Supplemental Trustee Objection further stated that the Chapter 13 Trustee opposed confirmation of the Chapter 13 Plan until an order valuing the Property was entered by the Court.

15.     On May 12, 2016, the Debtor filed an *Amended Chapter 13 Plan With Determination of Interest Rates* [ECF No. 36] (the "Amended Chapter 13 Plan").

16.     On May 18, 2016, Space Coast filed an *Objection to Debtor's Plan #2 of Reorganization* [ECF No. 41] (the "Second Space Coast Objection").  In the Second Space Coast

1   Objection, Space Coast again opposed the Amended Chapter 13 Plan on the grounds that the
2   Amended Chapter 13 Plan did not distributed to Space Coast the allowed amount of its claim
3   pursuant to Section 1325(a)(5)(B)(ii).

4       17.    On May 27, 2016, the Debtor filed the Motion to Convert. The Motion to Convert
5   simply stated that conversion would be in the best interests of the Debtor after a review of his
6   "schedules, statements and plan". *See* Motion to Convert [ECF No. 51], p. 1.

7       18.    On May 27, 2016, the Court entered an Order converting the Debtor's bankruptcy
8   case from Chapter 13 to Chapter 7.

**THE TRUSTEE'S OBJECTION TO THE DEBTOR'S EXEMPTIONS AND THE FILING OF THE MOTION TO RECONVERT**

11      19.    On May 31, 2016, the Trustee was appointed as the Chapter 7 Trustee in the
12  Debtor's bankruptcy case [ECF No. 54].

13      20.    On June 30, 2016, the Debtor filed an Amended Bankruptcy Petition that, among
14  other things, changed the primary nature of the Debtor's debts from consumer to business. *See*
15  Amended Bankruptcy Petition [ECF No. 66], p. 6.

16      21.    On June 30, 2016, the Debtor also filed an Amended Statement of Financial
17  Affairs that confirmed that he resided in Florida from January 2013 through July 2014. *See*
18  Amended Statement of Financial Affairs [ECF No. 67], p. 1.

19      22.    On June 30, 2016, the Debtor further filed a *Statement of Exemption from*
20  *Presumption of Abuse Under § 707(b)(2)* [ECF No. 69] (the "Statement of Exemption"). The
21  Statement of Exemption stated that the primarily nature of the Debtor's debts were not consumer
22  debts.

23      23.    On June 30, 2016, the Debtor filed amended bankruptcy schedules [ECF No. 70].
24  Schedule E of the Debtor's amended bankruptcy petition did not identify any priority creditors.
25  *See* Amended Schedule E, p. 11 [ECF No. 70]. Schedule F of the Debtor's amended bankruptcy
26  petition identifies unsecured creditors in the amount of $217,894.59. The amounts of the claims
27  set forth in the Debtor's Schedule F do not include any of the deficiency balances from the
28  secured creditors holding claims against the Debtor's vehicles. *See* Amended Schedule F, p. 11-

NELSON & HOUMAND, P.C.
3900 Paradise Road, Suite U, Las Vegas, Nevada 89169
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

19 [ECF No. 70].

24. On July 1, 2016, the Debtor appeared at his Section 341(a) Meeting of Creditors and testified, on two separate occasions during the examination, that he relocated from Florida to Nevada in July 2014. The Debtor's testimony regarding his residency in Nevada confirmed the statements made in his Statement of Financial Affairs.[3]

25. The Debtor further testified during his Section 341(a) Meeting of Creditors that the debts relating to his various vehicles were related to his business:

Trustee: Okay. Now I also noticed that you changed your petition from when it was originally filed from consumer debt to business debt. Why was that?

Debtor: Basically the American Express, almost everything that I put on it, especially at the end, was due to me trying to salvage what was left of my – of my business with vehicles. It was a side business that I had had and I started in Miami, and it was something that I used to the AmEx for to kind of float a lot of the different things that I did, which was the shipping of the cars and so on and so forth.

And it got to the point where when I moved back to Las Vegas, I was unable to sustain that business. It was just – it was only – I was only able to do business pretty much in Miami. And, you know, once I came out here, I basically had a bunch of cars, and I had just too much debt it was overwhelming.

***

Trustee: Okay. And what's Progressive Direct?

Debtor: Car insurance.

Trustee: Okay. Was that for your personal cars?

Debtor: That was for business-related cars. I mean, that was like a policy. That was – you know, I was with them for years, they just –

Trustee: So when did you stop the care business?

Debtor: Pretty much about I want to say three months after I moved here, so September, October-ish. By the end of the year of – when I first moved out here was when I just realized I couldn't do anything with the business. Me not being in Miami to

---

[3] A true and correct copy of the transcript of the Debtor's testimony during his July 1, 2016, Section 341(a) Meeting of Creditors is attached as Exhibit "1" to the *Declaration of Victoria L. Nelson In Support of Reply to Opposition to Objection to Debtor's Claimed Exemptions Pursuant to 11 U.S.C. §522(b)(3)(A) and Federal Rule of Bankruptcy Procedure 4003* [ECF No. 96].

-7-

watch over the cars and handle the business itself –

*See* transcript of the Debtor's testimony during his July 1, 2016, Section 341(a) Meeting of Creditors, pp. 7-8, 10-11 attached as Exhibit "1" to the *Declaration of Victoria L. Nelson In Support of Reply to Opposition to Objection to Debtor's Claimed Exemptions Pursuant to 11 U.S.C. §522(b)(3)(A) and Federal Rule of Bankruptcy Procedure 4003* [ECF No. 96].

26. On July 7, 2016, the Trustee filed her *Objection to Debtor's Claimed Exemptions Pursuant to 11 U.S.C. § 522(b)(3)(A) and Federal Rule of Bankruptcy Procedure 4003* [ECF No. 77] (the "Objection to Exemption"). The Objection to Exemption sought an order requiring the Debtor to claim the federal exemptions because he has not resided in Nevada for the 730-day period preceding his bankruptcy filing pursuant to Section 522(b)(3).[4] The Objection to Exemption also requested that the Debtor's exemption in the Property be limited to $155,675 pursuant to Section 522(p) in the event that the Court held that the Debtor had established the domicile requirements under Section 522(b)(3)(A).

27. On July 26, 2016, the Debtor filed the Motion to Reconvert, arguing that his case should be converted from Chapter 7 to Chapter 13. The sole basis for conversion to Chapter 13 that was articulated in the Motion to Reconvert is that the "Debtor has determined that the automobile debt for two Mercedes vehicle, originally taken on as business debt, has been converted to consumer debt since the automobiles are being used personally." *See* Motion to Reconvert, p. 2. The Debtor then reasoned that this conversion of business to personal debt necessitated conversion of his case from Chapter 7 to Chapter 13 pursuant to Section 707(b)(2).

28. On July 19, 2016, the Internal Revenue Service ("I.R.S") filed a proof of claim asserting a priority for unpaid taxes in the total amount of $75,209.01. *See* Claim Number 10-1.

. . .

---

[4] Although Section 522(b)(3)(A) requires the Debtor to claim the exemptions of the state in which he resided during the 730-day period preceding the filing of his bankruptcy petition, the state of Florida limits its exemptions to current residents. Since the effect of Section 522(b)(3)(A) is to preclude the Debtor from claiming any exemptions under state law, he is permitted to claim the exemptions under Section 522(d). *See* 11 U.S.C. § 522(b)(3)(A) ("If the effect of the domiciliary requirement under [Section 522(b)(3)(A)] is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under [Section 522(d)]").

-8-

29. The deadline for creditors to file proofs of claim is September 29, 2016.

30. The total amount of the Debtor's unsecured creditor body after calculating the unsecured portion of secured creditors' claims against vehicles ($127,878.62), the unsecured creditors identified in the Debtor's Amended Schedule F ($217,894.59), and the priority proof of claim filed by the I.R.S. ($75,209.01) is $420,982.21.

31. On August 16, 2016, the Court conducted a hearing on the Objection to Exemption. The Court continued the hearing on the Objection to Exemption to September 28, 2016, at 1:30 p.m. to allow the Debtor and the Trustee to file supplemental briefing addressing the Debtor's assertion that he was domiciled in Nevada for the 730-day period preceding his bankruptcy filing.

### III.   LEGAL ARGUMENT

**A.   The Motion to Reconvert Must Be Denied Because the Debtor Is Ineligible to File A Chapter 13 Bankruptcy Petition Due to the Size of His Unsecured Creditor Body**

Section 706(d) provides that a bankruptcy case cannot be converted to a different chapter if the debtor does not qualify to be a debtor under the new chapter:

> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

11 U.S.C. § 706(d).

Section 109(e) outlines the qualifications for individuals to seek bankruptcy relief and prevents an individual from filing a Chapter 13 bankruptcy petition unless his or her unsecured creditor body is less than $383,175 and secured creditor body is less than $1,149,525. *See* 11 U.S.C. § 109(e).

Here, the total amount of the Debtor's unsecured creditor body after calculating the unsecured portion of secured creditors' claims against vehicles ($127,878.62), the unsecured creditors identified in the Debtor's Amended Schedule F ($217,894.59), and the priority proof of claim filed by the I.R.S. ($75,209.01) is $420,982.21, well in excess of the maximum unsecured creditor body permitted under Section 109(e). As a result, the Debtor only qualifies to be a debtor under Chapters 7 and 11 of the Bankruptcy Code. For these reasons, the Motion to Reconvert

should be denied because the Debtor does not qualify to be a Chapter 13 debtor pursuant to Section 109(e).

**B.  Notwithstanding His Eligibility to File A Chapter 13 Bankruptcy Petition, the Debtor Has Failed to Meet His Burden In Demonstrating Cause Justifying A Reconversion of His Bankruptcy Case**

Conversion from Chapter 7 to Chapter 13 is governed by Section 706(a), which provides:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a).

The United States Supreme Court addressed the provisions of Section 706(a) in *Marrama v. Citizens Bank*, 549 U.S. 365 (2007) and held that a debtor's right to convert a Chapter 7 case to another chapter is not absolute.

In *Marrama*, an individual filed a voluntary petition under Chapter 7 of the Bankruptcy Code. In verified schedules attached to his bankruptcy petition, the debtor made a number of misleading or inaccurate statements regarding the primary asset of his bankruptcy case, certain real property located in Maine. Specifically, the debtor's bankruptcy schedules identified the real property as having a fair market value of $0.00 due to the fact that it was owned by a trust in which the was the beneficiary. The debtor also failed to state that he had transferred the real property to a newly created trust for no consideration seven months prior to filing his bankruptcy petition. At the debtor's Section 341(a) Meeting of Creditors, the Chapter 7 Trustee stated that he would seek to recover the real property as an asset of the debtor's bankruptcy case. Thereafter, the debtor filed a motion to convert his Chapter 7 case to one under Chapter 13. The bankruptcy court denied the debtor's request to convert his case holding that the debtor's concealment of bankruptcy assets constituted bad faith that precluded conversion of his Chapter 7 case to one under Chapter 13. *Id*. at 370. The debtor appealed the decision of the bankruptcy court and his primary argument on appeal was that he had an "absolute right to convert his case from Chapter 7 to Chapter 13" under Section 706(a). *Id*. Both the Bankruptcy Appellate Panel for the First

-10-

Circuit Court of Appeals and the First Circuit Court of Appeals affirmed the decision of the bankruptcy court. *Id.*

The Supreme Court granted certiorari to decide whether bad faith conduct by a debtor affects his or her right to convert a case from Chapter 7 to Chapter 13 pursuant to Section 706(a). *Id*. at 368. The Supreme Court affirmed the decision of the bankruptcy court, holding that bad faith on the part of a debtor can preclude his or her request to convert a Chapter 7 bankruptcy case to another chapter. The Supreme Court noted that Section 706(d) limits a debtor's right to convert a case to another chapter "unless the debtor may be a debtor under such chapter" and reasoned that a debtor who in bad faith had concealed significant assets, and whose case under Chapter 13 would be subject to immediate dismissal under Section 1307(c), did not have the right to convert to Chapter 13. The Supreme Court also rejected the debtor's argument that language appearing in a Senate Report addressing the effect of the enactment of Section 706 mandated that a debtor had an absolute right to convert a Chapter 7 bankruptcy case to Chapter 13. The language relied upon by the debtor was as follows:

> Subsection (a) of this section gives the debtor the one-time absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already once been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right. The policy of the provision is that the debtor should always be given the opportunity to repay his debts, and a waiver of the right to convert a case is unenforceable.

*Id*. at 371-72 (quoting S.Rep. No. 95-989, p. 94 (1978)); *see also* H.R.Rep. No. 95-595, p. 380 (1977).

The Supreme Court noted that the reference in the Senate Report that a debtor's right to convert is "absolute" fails to give full effect to Section 706(d), which limits the conversion of a bankruptcy case to another chapter unless the debtor qualifies to be a debtor under such chapter. *Id*. Finally, the Supreme Court refuted the debtor's argument by stating the following: "Assuming that the described debtor's 'opportunity to repay his debts' is a shorthand reference to a right to proceed under Chapter 13, the statement that he should 'always' have that right is

inconsistent with the earlier recognition that it is only a one-time right that does not survive a previous conversion to, or filing under, Chapter 13." *Id*. at 372.

While the Supreme Court has resolved the question concerning whether a debtor's bad faith conduct can preclude conversion from Chapter 7 to Chapter 13, there appears to a split of authority as to whether Section 706(a) permits a debtor to reconvert his or her case to Chapter 13 following an earlier request for conversion. This split arises from the language in Section 706(a) that "[a] debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, *if the case has not been converted under section 1112, 1208, or 1307 of this title*." See 11 U.S.C. § 706(a) (emphasis added). Some courts have held that this language allows a debtor the right to convert from chapter 7 to chapter 13 only if the case has not already been converted, and bars the debtor from seeking any further reconversion. *See In re Muth*, 378 B.R. 302 (Bankr. D. Colo 2007) (holding that debtors had only a one-time statutory right to convert).

Other courts have held that Section 706 does not preclude a debtor from seeking a subsequent discretionary conversion after notice and a hearing. *In re Povah*, 455 B.R. 328 (Bankr. D. Mass. 2011) (holding that while bankruptcy courts have the authority to permit a debtor who has previously converted case from Chapter 13 to Chapter 7 to reconvert case to one under Chapter 13, the burden of proof was on the debtor and that the debtor's circumstances had to be closely scrutinized). The courts that have permitted a debtor to reconvert his or bankruptcy case, however, have articulated the following standards for bankruptcy courts: (a) the ultimate burden of proof rests with the debtor; (b) the debtor's circumstances should be closely scrutinized; and (c) the court should weigh the interests of the debtor, the bankruptcy estate, and all creditors.[5] *See In re Anderson*, 354 B.R. 766 (Bankr. D.S.C. 2006).

Applying the standards articulated by the Supreme Court in *Marrama* and *Anderson*, the Debtor has the burden of establishing that there is cause to convert his bankruptcy case back to Chapter 13. This is because the only grounds cited in the Motion to Reconvert is that some of his

---

[5] In *In re Walker*, 77 B.R. 803 (Bankr. D. Nev. 1987), the United States Bankruptcy Court for the District of Nevada held that it had discretion to grant a debtor's request to convert his bankruptcy case from Chapter 7 to Chapter 13, notwithstanding a previous conversion.

1  debt that is related to certain vehicles was somehow converted from business debt to consumer
2  debt due to his personal use of the vehicles.  The Debtor, however, fails to cite to any legal
3  authority substantiating such an argument.  The timing of the Motion to Reconvert also lends
4  credence to the Trustee's contention that the Debtor's second request to convert his bankruptcy
5  case in a sixty day period is to avoid an adverse ruling on the Objection to Exemption.  Taken
6  toegther, the Debtor has not met his burden and the Motion to Reconvert should be denied.

**C.  Notwithstanding His Eligibility to File A Chapter 13 Petition, the Debtor Has Failed to Provide Sufficient Evidence to Establish that the Presumption of Abuse Under Section 707(b)(2) Is Implicated**

Section 707(b) provides that a debtor's bankruptcy case can either be dismissed or converted to Chapter 11 or 13 if allowing the case to proceed as a Chapter 7 would constitute an abuse of the Bankruptcy Code:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter *whose debts are primarily consumer debts*, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1) (emphasis added).

The provisions of Section 707(b) are not implicated if a debtor's debts are not "primarily consumer debts."  *See Id*.  Section 101(8) defines "consumer debt" as "debt incurred by an individual primarily for a personal, family or household purpose."  11 U.S.C. § 101(8).  In the event that a debtor's debts are primarily consumer in nature, a "court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of – (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,475, whichever is greater; or (II) $12,4745."  11 U.S.C. § 707(b)(2)(A)(i).

Here, the Debtor concedes in the Motion to Reconvert that the debts he contends have been converted into consumer debt originated as business obligations:

-13-

> Debtor has determined that the automobile debt for two Mercedes vehicles, *originally taken on as business debt*, has been converted to consumer debt since the automobiles are being used personally. The result of that is that the Debtors consumer debt outweighs his business debt.

*See* Motion to Reconvert, p. 2 (emphasis added).

Pursuant to Section 101(8), the primarily consideration in determining whether a debt is consumer in nature is whether it was "incurred" for a personal, family or household purpose. If the Debtor incurred debts in connection with vehicles that were utilized as part of a business venture, they are not transformed in consumer debt if they are subsequently used personally by the Debtor. The Debtor further testified during his July 1, 2016, Section 341(a) Meeting of Creditors that the debts related to his vehicles were incurred in connection with a car business that he ran in Miami, Florida.

Moreover, on June 30, 2016, the Debtor filed his *Statement of Exemption from Presumption of Abuse Under Section 707(b)(2)* [ECF No. 69] asserting that his debts were not primarily consumer in nature. As a result, the Debtor did not detail his monthly expenses and income in the manner specified under Section 707(b)(2)(A)(ii). *See* 11 U.S.C. § 707(b)(2)(A)(ii) (providing that a "debtor's monthly expenses shall be debtor's applicable monthly expense amounts specified under the National Standards and Local Standards . . ."). As a result, the Debtor has failed to provide the Trustee, U.S. Trustee, and his creditors with sufficient information to evaluate whether the presumption of abuse under Section 707(b)(2) has been implicated now that the Debtor is contending that his debts are primarily consumer in nature. Put simply, it appears that the Debtor is artificially re-classifying his debts in such a manner that he can choose the particular chapter of the Bankruptcy Code that suits his particular purpose at any given time.

For these reasons, the Motion to Reconvert should be denied because the Debtor has failed to meet his burden in establishing that his debts are primarily consumer in nature and that his bankruptcy case is presumed abusive and should be converted to Chapter 13.

. . .

-14-

**D.     Alternatively, the Court Should Continue the Hearing On the Motion to Reconvert to the Same Date and Time As the Hearing On the Objection to Exemption**

In the alternative, the Trustee respectfully requests that the Court continue the hearing on the Motion to Reconvert to September 28, 2016, at 1:30 p.m. to allow the Trustee to further examine the Debtor regarding the nature of each of his debts so that the Court can determine if the Debtor's obligations are not primarily consumer debt and implicate the provisions of Section 707(b)(2).

## IV.     CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter an Order: (i) denying the Motion to Reconvert in its entirety; and (ii) for such other and further relief as is just and proper.

Alternatively, the hearing on the Motion to Reconvert should be continued to September 28, 2016, at 1:30 p.m., the same date and time as the evidentiary hearing on the Objection to Exemption.

Dated this 16th day of August, 2016.

**NELSON & HOUMAND, P.C.**

*/s/ Jacob L. Houmand*
Jacob L. Houmand, Esq. (NV Bar No. 12781)
3900 Paradise Road, Suite U
Las Vegas, Nevada 89169-0903
Telephone:   702/720-3370
Facsimile:    702/720-3371

*[Proposed] Counsel for Victoria L. Nelson, Chapter 7 Trustee*